UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Laura Acosta, | ) | Civil Action No.: 4:15-cv-00495 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Hilton Grand Vacations Company, | ) | |
| LLC; Mark Lamonica; | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This case was originally filed in the Court of Common Pleas for Horry County, South Carolina. Initially, Plaintiff, Laura Acosta, alleged the following claims against the Defendants: 1) hostile work environment; 2) sexual harassment/sexual discrimination; 3) retaliation; 4) age discrimination; 5) disability discrimination; 6) violation of the South Carolina Wages Act, S.C. Code Ann. § 41-10-10, et seq.; 7) breach of contract; 8) violation of privacy rights; and 9) defamation. Defendants removed the case to this Court on the basis of federal question jurisdiction, 28 U.S.C. § 1441, on February 2, 2015.

The Court previously dismissed Plaintiff's cause of action for breach of an implied covenant of good faith and fair dealing; dismissed Plaintiff's cause of action for violation of her privacy rights to the extent it alleged HIPAA violations; and partially dismissed Plaintiff's breach of contract cause of action but allowed Plaintiff to go forward on a breach of contract claim for failure to follow a progressive discipline policy. Plaintiff has also withdrawn her claims for age discrimination, violation of the South Carolina Wages Act, invasion of privacy, and defamation. Plaintiff has indicated her consent to the dismissal of her breach of contract claim in its entirety and the dismissal of Defendant Mark Lamonica. *See* [ECF No. 75, pg. 13].

Plaintiff's remaining claims against Defendant Hilton Grand Vacations, LLC ("Hilton") are: 1) hostile work environment; 2) sexual harassment/sex discrimination; 3) retaliation; and 4) disability discrimination.

Pending before the Court is Defendants' [ECF No. 59] motion for summary judgment. This matter is before the Court with the Report and Recommendation [ECF No. 74] of Magistrate Judge Kaymani D. West filed on January 23, 2017.[1]  The Magistrate Judge recommended that Hilton's motion for summary judgment be granted. The Magistrate Judge also recommended that any claims against Mark Lamonica or Kevin Kahler be dismissed with prejudice pursuant to Rule 41.

### Standard of Review

The Magistrate Judge makes only a recommendation to the Court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court is charged with making a *de novo* determination of those portions of the R & R to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The right to *de novo* review may be waived by the failure to file timely objections. *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). The Court need not conduct a *de novo* review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate's proposed findings and recommendations." *Id.* Moreover, in the absence of objections to the R & R, the Court is not required to give any explanation for adopting the

---

[1]    This matter was referred to Magistrate Judge West pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and Local Civil Rule 73.02(B)(2)(g).

recommendation. *Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983).  However, in the absence of

objections, the Court must "'satisfy itself that there is no clear error on the face of the record in

order to accept the recommendation.'" *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d

310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

### Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a) (2010).  "A party asserting that a fact cannot be or is genuinely disputed must support

the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the

materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party

cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

When no genuine issue of any material fact exists, summary judgment is appropriate. *See Shealy v.*

*Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the

evidence must be viewed in the light most favorable to the non-moving party. *Id.*  However, "the

mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise

properly supported motion for summary judgment; the requirement is that there be no *genuine* issue

of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"Once the moving party has met [its] burden, the nonmoving party must come forward with

some evidence beyond the mere allegations contained in the pleadings to show that there is a

genuine issue for trial." *Baber v. Hospital Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). The

nonmoving party may not rely on beliefs, conjecture, unsupported speculation, or conclusory

allegations to defeat a motion for summary judgment. *See Baber*, 977 F.2d at 875.  Rather, the

3

nonmoving party is required to submit evidence of specific facts by way of affidavits, depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

## **Factual Background**

Plaintiff was hired by Defendant Hilton on February 27, 2012, as a Sales Executive at Anderson Ocean Club. Plaintiff's duties included selling Hilton timeshare products to potential customers, meeting with Hilton guests, and providing tours/sales presentations to Hilton guests. Plaintiff's immediate supervisor was Senior Sales Manager Kevin Kahler. Mark Lamonica was at a level of supervision above both Kevin Kahler and Plaintiff. Plaintiff's allegations of discrimination primarily involve allegations about Kevin Kahler's conduct. Plaintiff testified that she had no complaints about her treatment by any Hilton employee other than Kahler.

In paperwork Plaintiff completed as part of her employment with Hilton, Plaintiff self identified as belonging to the "White (Not Hispanic or Latino)" ethnic group. [ECF No. 59-8]. Plaintiff also indicated that she was not a disabled individual. *Id.* Plaintiff suffers from high blood pressure and diabetes but testified that neither condition affected her ability to perform her job duties. [Plaintiff's deposition, ECF No. 59-6, pg. 7-8, (depo. pg. 69-70)].

Plaintiff alleges that she had "good numbers" during her employment with Hilton and made over $78,000.00 in 8 months. [Plaintiff's Affidavit, ECF No. 71-3, ¶ 8]. Plaintiff alleges she sold to an average of seven out of ten clients. *Id.* Plaintiff also alleges that she was consistently in the top 15 of 60 performers and was regularly awarded bonuses. *Id.* at ¶¶ 36-37.

Plaintiff claims Kahler made negative comments to her including that she was the "token Yankee," that if she lost some weight she may get a man, and that she was not Hilton material. *Id.* at

4

¶ 10.  Plaintiff testified in her deposition that Kahler, on one occasion, made an inappropriate comment regarding her breasts. [Plaintiff's deposition, ECF No. 59-6, pg. 56, (depo. pg. 224-25)]. On another occasion, Kahler asked Plaintiff if she celebrated Cinco de Mayo. *Id.* at pg. 21 (depo. pg. 100).  Plaintiff alleges Kahler made comments regarding her hair color, religion, and Hispanic heritage. [Plaintiff's Affidavit, ECF No. 71-3, ¶ 10].  According to Plaintiff, Kahler's constant commentary made her work environment hostile. *Id.*

Plaintiff complained to one of her supervisors, Richard Fife, about Kahler's treatment of her. [Plaintiff's deposition, ECF No. 59-6, pg. 18-19, (depo. pg. 97-98)].  Plaintiff later complained to Lauren Hlavaty, Senior Human Resources Manager, and Mark Lamonica. *Id.* at pg. 22-25 (depo pg. 101-104).  After her complaints to Hlavaty, Plaintiff testified that Kahler's harassment stopped and her work environment improved. *Id.* at pg. 61 (depo. pg. 232).

Plaintiff testified that Kahler "was an equal opportunity jerk" and was rude and degrading to both male and female employees on a regular basis.  [Plaintiff's deposition, ECF No. 59-6, pg. 28, (depo. pg. 113)].  Lauren Hlavaty, Senior Human Resources Manager for Hilton, confirmed that she had received complaints about Kahler's rude and degrading behavior from both male and female employees. [Lauren Hlavaty deposition, ECF No. 59-10, pg. 7, 14 (depo pgs. 41, 66)].

Plaintiff states she suffers from a heart condition and required surgery for carpal tunnel syndrome and a breast reduction and that based on these medical conditions, she was treated differently. [Plaintiff's Affidavit, ECF No. 71-3, ¶¶ 15-16].

On May 6, 2013, Randy Devaux (Director Hotel Operations, Hilton Myrtle Beach Resort) contacted Gabriel Armstrong (Hilton's Senior Marketing Manager) to inform him that two guests had reported that Plaintiff made disparaging remarks about the Hilton Myrtle Beach during a tour at

the Anderson Ocean Club. [Devaux email, ECF No. 60-4]. Gabriel Armstrong forwarded Devaux's email to Mark Lamonica the same day.

On May 7, 2013, Richard Fife (Hilton's Lead Sales Manager) emailed Lamonica about another incident in which Plaintiff was allegedly rude to guests/customers. [Fife email, ECF No. 59-16]. Later that day, Lamonica suspended Plaintiff for three days pending an "investigation of a series of events of very unprofessional behavior in the workplace." [Lamonica memo, ECF No. 60-6, pg. 4]. On May 7, 2013, Lamonica, who no longer works for Defendant Hilton, prepared a memo to Lauren Hlavaty setting forth the reasons for suspending Plaintiff. Lamonica's reasons included: 1) Plaintiff had been counseled on many occasions regarding her rudeness to customers; 2) fellow employees complained about Plaintiff's rudeness; 3) Plaintiff made disparaging remarks regarding other Hilton properties; 4) an incident in February 2013 in which Plaintiff allegedly gave prescription medication to a guest; and 5) two specific instances of Plaintiff's alleged rudeness to customers. [Lamonica memo, ECF No. 60-6, pg. 4-5].

Plaintiff disputes that she was ever rude or disrespectful to guests or clients. [Plaintiff's affidavit, ECF No. 71-3, ¶ 32]. Plaintiff also states that she was never verbally counseled or disciplined for being rude to customers prior to her termination. *Id.* at ¶ 26. Plaintiff further disputes that she provided prescription medication to a client. *Id.* at ¶ 44. Plaintiff states that she witnessed Lamonica being rude to customers on several occasions but he was never disciplined. *Id.* at ¶ 25.

Plaintiff alleges that on May 7, 2013, she made a report regarding discriminatory actions on the part of defendant and its supervisors regarding her national origin, sex, perceived disability, and age. [EEOC Charge of Discrimination, ECF No. 71-2].

6

On May 11, 2013, Hlavaty and Lamonica called Plaintiff to terminate her. According to Hlavaty's notes of the call, Lamonica started the call and informed Plaintiff of their concerns regarding her pattern of unprofessional behavior. [Hlavaty notes - May 11, 2013, ECF No. 60-7]. Plaintiff responded that she was always professional and had great sales numbers. *Id*. The notes indicate "the most important situation" involved Plaintiff providing prescription medication to a guest. *Id*. The call ended with Lamonica and Hlavaty informing Plaintiff that Hilton was "moving to separate." *Id*.

On May 13, 2013, Hlavaty and Lamonica called Plaintiff again because Plaintiff did not understand the May 11 phone call. [Hlavaty notes - May 13, 2013, ECF No. 60-8]. Plaintiff questioned why she was being terminated. *Id*. Lamonica informed Plaintiff that she was being terminated because there were complaints from owners and hotel partners and that she was disruptive with customers on the sales floor. *Id*. Lamonica also took the position that Plaintiff had previously admitted providing medication to a customer. *Id*. Plaintiff alleges that she was provided different reasons for her termination. [EEOC Charge, ECF No. 71-2].

Plaintiff states that her last day at Hilton was May 14, 2013. [Plaintiff's affidavit, ECF No. 71-3, ¶ 28].

## Discussion

### I. Hostile Work Environment

Title VII of the Civil Rights Act of 1964 states that "[i]t shall be an unlawful employment practice for any employer ... to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). To make out a claim against

her employer for creating a hostile work environment under Title VII, a plaintiff must show "that the offending conduct (1) was unwelcome, (2) was based on [race, color, religion, sex, or national origin], (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment, and (4) was imputable to her employer." *Ocheltree v. Scollon Productions, Inc.*, 335 F.3d 325, 331 (4th Cir. 2003) (en banc) (citing *Spicer v. Va., Dep't of Corr.*, 66 F.3d 705, 710 (4th Cir. 1995) (en banc)).

Plaintiff's hostile work environment claim is based on Kahler's alleged conduct directed toward her. The Magistrate Judge recommended dismissing Plaintiff's hostile work environment claim because Plaintiff failed to establish the "severe and pervasive" element of her prima facie case. Specifically, the Magistrate Judge found that Plaintiff had not set forth evidence of an environment that a reasonable person would objectively find to be hostile or abusive.  The Magistrate Judge also found that Plaintiff had not established that her alleged harassment was based on her gender or national origin.

In her objections to the Magistrate Judge's Report and Recommendation, Plaintiff contends she set forth sufficient evidence to satisfy the "severe and pervasive" element of her prima facie case. Plaintiff notes that Kahler referred to her as the "token Yankee," made fun of her weight, and made comments regarding her Hispanic heritage.  Plaintiff alleges Kahler would yell at her when she did not sell a product to a tour. Kahler allegedly made an inappropriate remark regarding Plaintiff's breasts and her upcoming breast reduction surgery. On one occasion, Kahler asked Plaintiff if she celebrated Cinco de Mayo. Plaintiff does not provide specific examples but generally alleges Kahler made comments regarding her hair color, religion, and Hispanic heritage and that his constant commentary made her work environment hostile.

8

While Kahler's conduct was certainly rude or offensive, his conduct was not "severe or pervasive" such that a reasonable person would find Plaintiff's work environment hostile or abusive. The "severe or pervasive" element has "both subjective and objective components." *Ocheltree*, 335 F.3d at 333 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993)). The environment must be perceived by the victim as hostile or abusive, and that perception must be reasonable. *Harris*, 510 U.S. at 22. "[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (quoting *Harris*, 510 U.S. at 23, 114 S.Ct. 367). Whether an environment is objectively hostile or abusive depends on factors such as: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. This standard is designed to "filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal citation and quotation omitted). Viable hostile work environment claims often involve repeated conduct. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115–17 (2002). That is because, "in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015). A "mere utterance of an epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII." *Boyer-Liberto*, 786 F.3d at 277. "Harassment reaches the sufficiently severe or pervasive level when it creates 'an environment that a reasonable person would find hostile or abusive' and that the victim

9

herself subjectively perceive[s] . .. to be abusive.'" *Harris*, 510 U.S. at 21.

Plaintiff relies on *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264 (4th Cir. 2015), for the proposition that an isolated incident can create an actionable hostile work environment. The U.S. Supreme Court and Fourth Circuit have both recognized that "an 'isolated incident' of harassment can 'amount to discriminatory changes in the terms and conditions of employment,' if that incident is 'extremely serious.'" *Boyer-Liberto*, 786 F.3d at 277 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Plaintiff focuses on Kahler's brief comment regarding her upcoming breast reduction surgery. Kahler's brief comment, while insensitive and inappropriate, does not rise to the level of the conduct at issue in *Boyer-Liberto*.

In *Boyer-Liberto*, a "livid" managerial employee, Trudi Clubb ("Clubb"), screamed at the plaintiff while standing so close the plaintiff could feel Clubb's breath on her face and was sprayed with Clubb's saliva. *Boyer-Liberto*, 786 F.3d at 269. After loudly berating the plaintiff in a physically threatening manner, Clubb told the plaintiff she was going to make her sorry and called her either a "damn porch monkey" or a "dang porch monkey." *Id.* at 270. The incident continued into the following day when Clubb again threatened the plaintiff saying "I'm going to get you . . .I'm going to go to [hotel owner] Dr. Berger." *Id.* Clubb concluded the incident by looking directly at plaintiff and again calling her a "porch monkey." *Id.* In holding that the isolated incident involving Clubb could alter the conditions of employment and create a hostile work environment, the Fourth Circuit recognized that "no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of *an unambiguously racial epithet . . .by a supervisor in the presence of his subordinates*." *Id.* at 280.

Kahler's comment about Plaintiff's upcoming breast reduction surgery was unquestionably rude and inappropriate. His comment, however, is not on par with the circumstances surrounding the incident in *Boyer-Liberto*. The comment did not involve the use of an unambiguously racial epithet in the presence of co-workers. Plaintiff does not allege that Kahler was berating her, angry, or physically threatening when he made the comment. The comment was made apparently with no one else present during an evaluation. *Boyer-Liberto* cannot save Plaintiff's hostile work environment claim. In summary, Kahler's brief comment about the Plaintiff's upcoming breast reduction surgery, whether she celebrates Cinco de Mayo, and general comments about her hair color, Hispanic heritage, and religion[2] do not rise to the level of hostile or abusive.

Plaintiff has also failed to establish that Kahler's mistreatment of Plaintiff was based on her gender or national origin. The federal anti-discrimination statutes do not protect employees from hostility and abuse from their supervisors unless the objectionable conditions occur because of a protected characteristic. *See Graham v. Prince George's Cnty.*, 191 F. App'x 202, 204 (4th Cir. 2006) (finding the district court did not err in determining that "although [the] facts reflected an unpleasant working environment, they did not support a hostile one based on an unlawful characteristic"). A plaintiff asserting a hostile work environment claim must show that "but for" a protected characteristic, she would not have been a victim of the alleged harassment. *See, e.g., Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998) (affirming grant of summary judgment of hostile-work-environment claim as plaintiff had not provided evidence the complained-of conduct was motivated by plaintiff's protected trait).

---

[2]    Plaintiff did not allege discrimination based on her religion in her EEOC charge. Accordingly, the Court will not consider any claims based on religious discrimination.

At most, Plaintiff alleges rude treatment by Kahler.  Kahler had a reputation of being rude to everyone, regardless of the individual's gender or race.  Defendant Hilton had received complaints about Kahler's conduct from both male and female employees. Plaintiff described Kahler as "an equal opportunity jerk." Kahler's comments do not appear to reflect a bias or any animus based on race or gender.  His comments and interactions with people are simply rude and inappropriate, but not necessarily hostile or abusive.  General complaints of rude treatment are not sufficient to sustain a hostile work environment claim. *See, e.g., Baqir v. Principi*, 434 F.3d 733, 747 (4th Cir. 2006). Because Plaintiff has failed to establish that Kahler's conduct was based on a protected trait or that Kahler's conduct was sufficiently severe or pervasive to alter the conditions of her employment, Hilton is entitled to summary judgment on Plaintiff's hostile work environment claim.

## II. Sexual Harassment/Sex Discrimination

Plaintiff's second cause of action alleges sexual discrimination under Title VII.  A plaintiff may establish a claim of sex based discrimination through two avenues of proof.  First, a plaintiff may demonstrate, through direct or circumstantial evidence, that discrimination motivated the employer's adverse employment decision. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101-02 (2003).  This does not require a plaintiff to demonstrate that the prohibited characteristic was the sole motivating factor.  Rather, a plaintiff succeeds on a mixed-motive claim if she "demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m); *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 317 (4th Cir. 2005).  Once such a showing has been made, the employer cannot escape liability.  However,

12

through use of a limited affirmative defense, if an employer can demonstrate that it "would have taken the same action in the absence of the impermissible motivating factor," it can restrict a plaintiff's damages to injunctive and declaratory relief, and attorney's fees and costs. 42 U.S.C. § 2000e-5(g)(2)(B); *Diamond*, 416 F.3d at 317.

A plaintiff may also establish a claim under the *McDonnell Douglas* "pretext" framework. *Id*. at 318. Under the *McDonnell Douglas* pretext framework, a plaintiff must first establish a prima facie case by showing: 1) she is a member of a protected class; 2) she suffered adverse employment action; 3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and 4) the position remained open or was filled by similarly qualified applicants outside of the protected class. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004), *abrogated in part on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517 (2013). If plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Hill*, 354 F.3d at 285.  If the employer meets this burden, then the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons were not its true reasons, but were in fact a pretext for intentional discrimination. *Id.*; *Heiko v. Colombo Sav. Bank, F.S.B.*, 434 F.3d 249, 258 (4th Cir. 2006)

In this case, the Magistrate Judge analyzed Plaintiff's claim under the *McDonnell Douglas* "pretext framework." The Magistrate Judge found that Plaintiff failed to establish a prima facie case of discrimination because she did not establish that she was performing her job duties at the level that met her employer's expectations. The Magistrate Judge also found that even if, assuming

13

arguendo, Plaintiff established a prima facie case of discrimination, she could not establish that Hilton's legitimate, nondiscriminatory reasons for her suspension and termination were a pretext for discrimination. Accordingly, the Magistrate Judge recommended granting summary judgment on Plaintiff's Title VII sex discrimination claim.

Plaintiff does not challenge the Magistrate Judge's analysis of her claim under the *McDonnell Douglas* pretext framework.  Plaintiff argues in her objections that she was meeting her employer's expectations with respect to her job performance and that she sufficiently established that the legitimate, nondiscriminatory reasons given for her suspension and termination were a pretext for discrimination.  Plaintiff also argues that Kahler's treatment constituted an adverse employment action. However, as stated above, Kahler's conduct was not severe or pervasive such that it altered Plaintiff's work conditions or created a hostile work environment.  Therefore, Plaintiff cannot rely on Kahler's conduct to establish an adverse employment action.

Hilton also argues that Plaintiff did not allege in her Complaint that her suspension or termination were discriminatory based on her sex and only first raised the claim in response to Hilton's motion for summary judgment.  However, in liberally construing the Complaint, the Court will give Plaintiff the benefit of the doubt that she alleged that her suspension and termination were discriminatory based on her sex. *See, e.g. White v. Roche Biomedical Labs., Inc.*, 807 F. Supp. 1212, 1216 (D.S.C. 1992).  Nevertheless, as explained more fully below, the Court concludes that although Plaintiff may have arguably established a prima facie case of discrimination, Hilton is entitled to summary judgment because Plaintiff cannot show that Hilton's legitimate, nondiscriminatory reasons for Plaintiff's suspension and termination were a pretext for intentional discrimination.

14

As to Plaintiff's prima facie case, the Court agrees with Plaintiff that a question of fact exists as to whether she was meeting her employer's job expectations. According to Plaintiff's affidavit, she was never disciplined or warned regarding alleged rude behavior during her employment or the prescription medication incident until her termination.  Plaintiff's affidavit further states that she made a first level bonus consistently for eight months and was in the top 15 of 60 performers at the company on average. Viewing the evidence in the light most favorable to Plaintiff, there is sufficient evidence from which a reasonable juror could conclude that Plaintiff was performing her job duties at the level of her employer's expectations at the time of her suspension and termination.

Taking the evidence in the light most favorable and resolving factual questions in Plaintiff's favor, the Court finds that Plaintiff has established a prima facie case of discrimination based on her sex.  Plaintiff is a member of a protected class, suffered an adverse employment action through her suspension and termination, was performing her job duties at the level of her employer's expectations at the time of her termination, and her position remained open after her termination.

Hilton has, nevertheless, put forth a legitimate, non-discriminatory reason for its decision to suspend and terminate Plaintiff.  The Lamonica memorandum and various emails in the record reflect several instances of rude conduct towards guests/customers by Plaintiff, an incident in which Plaintiff allegedly provided prescription medication to a guest, and an incident in which Plaintiff allegedly made disparaging remarks about another Hilton property.  Those reasons constitute legitimate, nondiscriminatory reasons for the adverse employment action and satisfy Hilton's burden of production on that point.

The burden now shifts back to Plaintiff to prove by a preponderance of the evidence that Hilton's stated reasons, summarized in the Lamonica memorandum, were not its true reasons,

but were in fact a pretext for discrimination.  The "final pretext inquiry merges with the ultimate burden of persuading the court that the plaintiff has been the victim of intentional discrimination, which at all times remains with the plaintiff." *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010).  In this case, Plaintiff has not directed the Court to sufficient evidence to suggest that the reasons given for her suspension and termination were a pretext for intentional discrimination.  Most critically, other than Kahler, Plaintiff has offered no evidence that any other individual at Hilton possessed discriminatory intentions.  Plaintiff testified that she had no complaints about her treatment by any Hilton employee other than Kahler.  Although Kahler may have been the source of some of the information Lamonica relied upon in drafting his memo to justify Plaintiff's suspension, it does not appear that Kahler played any role in the decision to suspend or terminate Plaintiff.  Plaintiff has failed to set forth sufficient evidence showing that she was the victim of intentional discrimination based on her sex when she was suspended and terminated or that Hilton's reasons for her suspension and termination were a pretext for intentional discrimination.  Hilton is, therefore, entitled to summary judgment on Plaintiff's second cause of action for sexual discrimination under Title VII.

## III. Retaliation

The Magistrate Judge also recommended summary judgment with respect to Plaintiff's claim of retaliation under Title VII.  Initially, the Magistrate Judge noted that "[w]ithout any detail of the substance of Plaintiff's unsubstantiated statement that she made a 'report regarding discriminatory actions' on May 7, 2013," Plaintiff cannot establish a prima facie case of retaliation as to the May 7, 2013 alleged protected activity.  The Magistrate Judge then assumed, without deciding, that Plaintiff had established a prima facie case and analyzed Plaintiff's retaliation claim

16

under the *McDonnell Douglas* burden shifting framework.  In applying *McDonnell Douglas*, the Magistrate Judge found that Plaintiff failed to establish that Hilton's reasons for her termination were pretextual or that her protected activity was the but-for cause of her termination.

Under *McDonnell Douglas*, a plaintiff may establish a prima facie case of retaliation by proving three elements: 1) she engaged in a protected activity; 2) that her employer took adverse action against her; and 3) that a causal relationship existed between the protected activity and the adverse employment activity. *Foster v. Univ. of Maryland-Eastern Shore*, 787 F.3d 243, 250 (4th Cir. 2015).  If the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011).  If the employer meets this burden, the plaintiff must then prove by a preponderance of the evidence that the employer's stated reasons were not its true reasons, but were in fact a pretext for retaliation. *Hoyle*, 650 F.3d at 337; *Mercer v. PHH Corp.*, 641 Fed. Appx. 233, 240 (4th Cir. 2016).  In order to establish pretext, a Title VII retaliation plaintiff must prove that his or her protected activity was a but-for cause of the adverse employment action by the employer. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2532-34 (2013); *Foster*, 787 F.3d at 252.

Plaintiff's retaliation claim is a bit of a moving target in that it is not entirely clear on what dates Plaintiff engaged in alleged protected activity.  Starting with Plaintiff's EEOC charge, which was made under penalty of perjury, Plaintiff alleges "[p]rior to my termination I complain[ed] to Human Resources regarding sexual harassment.  2 weeks after my complaint I was terminated from my employment." [EEOC Charge, ECF No. 71-2]  Plaintiff's EEOC charge further states, "on May 7, 2013 I made a report regarding discriminatory actions on the part of defendant and its supervisors

regarding my national origin, sex, perceived disability and age." *Id.* Plaintiff's sworn affidavit states that she informed her employer of "certain complaints regarding my employment, hostile work environment, differential treatment based on sex, national origin and religious discrimination." [Plaintiff's affidavit, ECF No. 71-3, ¶ 21]. Plaintiff alleges that based on those complaints her work environment became much worse and not long after her complaints, she was terminated. *Id.* at ¶¶ 22-23. Plaintiff also testified in her deposition that she complained to Richard Fife, Mark Lamonica, and Lauren Hlavaty about Kahler's alleged discriminatory conduct.

Viewing the evidence in the light most favorable to Plaintiff, the Court finds a genuine issue of material fact as to whether Plaintiff engaged in protected activity. There is a question of fact as to the substance of the alleged May 7, 2013 protected activity. Assuming Plaintiff's version of events is true, Plaintiff made multiple complaints regarding alleged discriminatory conduct and practices prior to her suspension and termination. It is for a jury to determine the substance of those alleged complaints, whether they were made, and when. Because there is a question of fact as to whether Plaintiff engaged in protected activity, Defendant Hilton is not entitled to summary judgment on that basis.

At the summary judgment stage, where facts sworn to by Plaintiff contradict the Defendant's version of the facts, the Court is required to resolve factual issues in controversy in favor of the non-moving party. *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990) (stating "a District Court must resolve any factual issues of controversy in favor of the non-moving party only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied"). Accordingly, the Court finds that Plaintiff has established a prima facie case of retaliation under Title VII. Plaintiff engaged in protected activity

by making multiple complaints regarding discrimination. These complaints predated her termination and at least one or more of the complaints predated her suspension. The temporal proximity between Plaintiff's alleged complaints and her suspension and termination satisfies the causation requirement of the prima facie case.

Defendant has met its burden of establishing a legitimate, nondiscriminatory reason for Plaintiff's suspension and termination. As stated above, the reasons for Plaintiff's suspension and termination set forth in the Lamonica memorandum satisfy Defendant's burden to produce a legitimate, nondiscriminatory reason for its adverse employment decision. The burden now shifts back to Plaintiff to demonstrate that the stated reasons were a pretext for retaliation. "A plaintiff meets the burden of demonstrating pretext by showing that the employer's proffered explanation is 'unworthy of credence' or by offering circumstantial evidence sufficiently probative of the issue of retaliation." *Vicino v. Maryland*, 982 F. Supp. 2d 601, 613 (D. Md. 2013) (citing *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004)). Following *Nassar*, a plaintiff must establish that "his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Nassar*, 133 S.Ct. at 2534.

The Magistrate Judge recommended granting summary judgment on Plaintiff's claim for retaliation finding that Plaintiff could not establish that Hilton's reasons for suspending and terminating Plaintiff were a pretext for retaliation. In reviewing the record and viewing the evidence in the light most favorable to the Plaintiff, the Court respectfully disagrees with the Magistrate Judge on the issue of pretext with regard to Plaintiff's retaliation claim. First, Plaintiff alleges she received two different reasons for her termination. [EEOC Charge, ECF No. 71-2]. A different explanation for termination, provided at different times, is "in and of itself, probative of pretext."

19

*Fox v. Leland Volunteer Fire/Rescue Dept., Inc.*, 648 Fed.Appx. 290, 294 (4th Cir. 2016).  The

temporal proximity between Plaintiff's alleged protected activity and her suspension and

termination is also a relevant factor in establishing pretext in this case.  *See, e.g., Warren v.*

*Halstead Industries, Inc.*, 802 F.2d 746, 757, 758 (4th Cir. 1986) (noting that close temporal

proximity—in that case less than a month—combined with other relevant evidence can give rise to

an inference of causal connection and pretext).  Additionally, aside from the email from Kevin Fell

dated February 4, 2013, in which he reported that Plaintiff provided a guest with prescription

medication, there is no documentation of the reasons given for Plaintiff's termination until after she

complained about Kahler's conduct.  Plaintiff also states that she was never disciplined or warned

about her demeanor with customers until her termination.  Defendant Hilton did not communicate

any concerns with Plaintiff about the prescription medication incident until some three months later,

after she complained about Kahler.  Plaintiff also alleges that she frequently received bonuses while

employed at Hilton and was, on average, in the top 15 of 60 performers at the company.  A

reasonable juror could conclude that but-for Plaintiff's protected activity, she would not have been

suspended or terminated.  For those reasons, the Court finds there is a question of fact as to whether

Hilton's legitimate, nondiscriminatory reasons for terminating Plaintiff were a pretext for

retaliation.  Hilton's motion for summary judgment is due to be denied as to Plaintiff's retaliation

claim.

## IV. Disability Discrimination

Plaintiff alleges Defendant Hilton wrongfully terminated her based on her disability in

violation of the Americans with Disabilities Act of 1990 ("ADA").  To establish a prima facie

wrongful discharge claim under the Americans with Disabilities Act (ADA), a plaintiff must show

that (1) she was a qualified individual with a disability; (2) she was discharged; (3) she was fulfilling her employer's legitimate expectations at the time of discharge; and (4) the circumstances of her discharge raise a reasonable inference of unlawful discrimination. *Reynolds v. American Nat. Red Cross*, 701 F.3d 143, 150 (4th Cir. 2012). The ADA defines disability as any one of the following: "(A) a physical or mental impairment that substantially limits one or more ... major life activities ...; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1); *Reynolds*, 701 F.3d at 150. The Magistrate Judge found that Plaintiff failed to establish a prima facie case of wrongful discharge in violation of the ADA because Plaintiff could not establish that she was a "qualified individual with a disability" under 42 U.S.C. § 12102(1)(A), (B), or (C). The Court agrees.

First, Plaintiff's own testimony indicates that she does not possess a physical or mental impairment that substantially limits one or more major life activities and that there is no record of such an impairment. Additionally, Plaintiff cannot establish that she was "regarded as having such an impairment." To establish that Plaintiff was regarded as being disabled, Plaintiff must show that: 1) Hilton mistakenly believed that she had a physical or mental impairment that substantially limited one or more major life activities; or 2) Hilton mistakenly believed that an actual, nonlimiting impairment substantially limited her in one or more major life activities. *Coursey v. Univ. of Maryland Eastern Shore*, 577 Fed. Appx. 167, 174 (4th Cir. 2014); *but see West v. J.O. Stevenson, Inc.*, 164 F. Supp. 3d 751, 772 (E.D.N.C. 2016) (questioning *Coursey* and noting that under the ADAAA an individual is "regarded as" having an impairment if he has an actual or perceived impairment, regardless of whether that impairment has any effect on a major life activity). In *West v. J.O. Stevenson, Inc.*, the district court reasoned that, following the ADAAA, an individual was

21

"regarded as" disabled where :1) he is actually impaired and such impairment is known to his employer, or 2) his employer perceives him to be impaired. *West*, 164 F. Supp. 3d at 772. It does not matter whether this Court applies the definition set forth in *Coursey* or the definition set forth in *West*. Under either framework, Plaintiff's ADA claim fails because she has failed to establish that Hilton perceived her to be impaired. Because Plaintiff has not established that she is a qualified individual with a disability, her ADA discrimination claim fails and Hilton is entitled to summary judgment.

**V. Breach of Employment Contract**

In her objections to the Magistrate Judge's Report and Recommendation, Plaintiff indicates that she does not object to the dismissal of her breach of contract claim. Plaintiff's breach of contract claim is therefore dismissed.

**VI. Mark Lamonica**

Plaintiff also consents to the dismissal of her claims against Mark Lamonica. Accordingly, Mark Lamonica is dismissed from this case.

<u>**Conclusion**</u>

Having reviewed the record and applicable law, the Court respectfully adopts in part and rejects in part the Magistrate Judge's Report and Recommendation [ECF No. 74]. Defendant Hilton's [ECF No. 59] motion for summary judgment is **GRANTED in part and DENIED in part**. Specifically, Defendant Hilton's motion for summary judgment is **GRANTED** as to Plaintiff's claims for hostile work environment, sexual discrimination, and ADA discrimination. Defendant Hilton's motion for summary judgment is **DENIED** as to Plaintiff's retaliation claim. Plaintiff's claims for breach of employment contract, ADEA discrimination, violation of the South

Carolina Wage Act, and state law claims for invasion of privacy and defamation are **DISMISSED** with the Plaintiff's consent.  Plaintiff's claims against Mark Lamonica are also **DISMISSED** with the Plaintiff's consent.

      IT IS SO ORDERED.

March 30, 2017                                                    s/ R. Bryan Harwell
Florence, South Carolina                                  R. Bryan Harwell
                                                                          United States District Judge